ALI MURSAL,
        Plaintiff,

v.                                      Case No. 19-C-1367

KIRK RATCHMAN,
        Defendant.

## ORDER

Ali Mursal, a Wisconsin state prisoner, filed a pro se complaint under 42 U.S.C. § 1983. I screened the complaint and permitted the plaintiff to proceed on an Eighth Amendment claim. The defendant moves for summary judgment on the ground that the plaintiff failed to exhaust his available administrative remedies before bringing this lawsuit. ECF No. 30. The plaintiff, now represented by recruited counsel, opposes the motion. ECF No. 39. The motion is fully briefed and ready for this decision.

### I. BACKGROUND[1]

The plaintiff was incarcerated at the Wisconsin Resource Center (WRC) and Columbia Correctional Institution during all relevant times. ECF No. 34, ¶ 1; *see* https://appsdoc.wi.gov/lop/home.do (DOC # 00541673). The WRC is a correctional facility managed by the Wisconsin Department of Health Services in partnership with the Wisconsin Department of Corrections. ECF No. 34, ¶ 2. I allowed the plaintiff to proceed

---

[1] Facts in this section are taken from the defendant's proposed findings of fact and declarations in support of his motion for summary judgment, ECF Nos. 32–34; the plaintiff's response, supplemental proposed findings of fact, and supporting declarations, ECF Nos. 35–38; and the defendant's response to the plaintiff's facts, ECF No. 41. I will consider the proposed facts only to the extent the parties support them with evidence in the record, *see* Fed. R. Civ. P. 56(c)(1), and will consider arguments in the supporting memorandum only to the extent they properly refer to the facts, *see* Civil L. R. 56(b)(6).

on a claim alleging that Nurse Kirk Ratchman provided inadequate medical treatment for his self-inflicted cut. ECF No. 10.

**A. The Plaintiff's Complaint and Appeal**

On January 19, 2017, the plaintiff signed his inmate complaint about Ratchman. ECF No. 32, ¶ 3; ECF No. 33-2 at 11. The inmate complaint examiner's office did not receive the complaint until January 26, 2017, and did not acknowledge having received it until February 1, 2017. ECF No. 32, ¶ 4; ECF No. 33-2 at 1. An institutional complaint examiner determined that the plaintiff received adequate medical care and recommended dismissing the complaint. ECF No. 33-2 at 2. On March 17, 2017, the reviewing authority accepted that recommendation and dismissed the complaint. ECF No. 32, ¶ 4; ECF No. 33-2 at 4. Over the next four months, the inmate complaint office received neither an appeal of the dismissal nor an inquiry from the plaintiff about it. ECF No. 33-2 at 10.

In a letter to the corrections complaint examiner (CCE) dated July 17, 2017, the plaintiff wrote that he had filed an appeal of his dismissed inmate complaint "within the 10 day timeframe" but had not yet received a response "on the status of my complaint." ECF No. 32, ¶ 5; ECF No. 33-3 at 1. He asked if he could "please refiled [sic] my complaint to the CCE Office again." ECF No. 33-3 at 1. On August 2, 2017, the CCE responded to the plaintiff's letter and explained that there were "no records of the CCE office receiving an appeal" for his complaint. ECF No. 32, ¶ 6; ECF No. 33-3 at 2. The letter advised the plaintiff that he could refile his appeal and encouraged him "to write up a brief summary explaining why the appeal is late." ECF No. 32, ¶ 6; ECF No. 33-3 at 2.

On August 10, 2017, the CCE's office received the plaintiff's appeal from the dismissal of his complaint, which is dated March 23, 2017. ECF No. 32, ¶ 7; ECF No. 33-2

at 5, 16. The next day, an institutional complaint examiner printed and provided to the plaintiff a receipt acknowledging that the CCE's office received his appeal. ECF No. 32, ¶ 9; ECF No. 33, ¶ 13; ECF No. 33-2 at 10. The plaintiff included with the appeal another letter acknowledging his first letter, which he says he had help writing. ECF No. 33-2 at 17. The letter states that the plaintiff "did so file my Appeal within (10) days via UPS Mail while I was at CCI" and asks "to re-file my Appeal with a photocopy of the original and/or carbon copy." *Id.* The plaintiff says he is "unsure if my mail was sent out" and notes that after he deposits mail "with Correctional Staff[,] it is out of my hands." *Id.* The plaintiff asks the CCE's office to "please accept [the appeal] late with good cause." *Id.*

On August 14, 2017, the CCE recommended denying the plaintiff's appeal. *Id.* at 6. The CCE determined that the appeal was untimely because it was received "beyond the ten calendar day timeframe provided under Wis. Admin. Code, s. DOC 310.13(1)," and that there was "no good cause to address this late appeal." *Id.* On August 23, 2017, the Office of the Secretary accepted the CCE's recommendation and dismissed the plaintiff's appeal as untimely. ECF No. 32, ¶ 10. ECF No. 33-2 at 7.

Before filing his inmate complaint about this issue, the plaintiff received (and acknowledged receiving) an inmate handbook. ECF No. 32, ¶ 11. The handbook explains the process for filing and appealing inmate complaints. *Id.*; ECF No. 34-1 at 2–3. The plaintiff also filed and timely appealed several other inmate complaints prior to 2017. ECF No. 32, ¶ 12; ECF No. 35-1 at 1; ECF No. 33-4 at 11; ECF No. 33-5 at 10. In two previous instances, the plaintiff was provided written acknowledgment that his appeal was received, and review of his appeal was completed within three-to-seven weeks. ECF No. 32, ¶¶ 13–14; ECF No. 33-4 at 11; ECF No. 33-5 at 10.

## B. The Plaintiff's Proposed Facts

The plaintiff previously provided a declaration stating he is a native of Kenya, and his native language is "MaMa" or "Ma." ECF No. 39 (citing ECF No. 4, ¶¶ 3–4). He says English is his second language, and he did not begin his "formal education in the English language" until 2017. ECF No. 36, ¶¶ 1–2. He says he has a third-grade understanding of written and spoken English. ECF No. 37, ¶ 5; ECF No. 37-1. He says he was in WRC after being involuntarily committed for psychological treatment under Wisconsin law in 2013. ECF No. 36, ¶ 3; ECF No. 37, ¶ 8. In July 2017, a psychiatrist recommended the plaintiff remain involuntarily committed and medicated for an additional twelve months. ECF No. 37-2 at 5. It is not clear whether a state authority accepted that recommendation.

The plaintiff swears the inmate handbook and other WRC or DOC documents provided to him were written only in English. ECF No. 37, ¶ 24. He says he has "repeatedly asked for such information in my native language." *Id.* The plaintiff says that, because he has limited English skills, he received assistance from other inmates "in drafting, preparing, and filing all prior internal administrative complaints and appeals of such complaints." *Id.*, ¶ 23. The plaintiff swears that WRC inmate Steven Scott assisted him "in preparing the complaints, correspondence, and appeals filed with prison administrative officials, and which are related to this lawsuit." *Id.*, ¶ 7. Scott provided a declaration swearing he helped the plaintiff draft his inmate complaint. ECF No. 38, ¶ 7.

The plaintiff says he was on suicide watch when the institutional complaint examiner sent him the notice of dismissal. ECF No. 36, ¶ 8. He says he was transferred from WRC to Columbia Correctional Institution on March 22, 2017, and did not receive "actual notice of the dismissal of his complaint" until after his transfer and his removal

from suicide watch. *Id.*, ¶¶ 8–9; ECF No. 37, ¶¶ 13–14; ECF No. 37-4 at 3. The plaintiff swears he received no mail and no inmate complaint notices while he was on suicide watch or before he was transferred to Columbia. ECF No. 37, ¶ 14. He says he received the "notice of dismissal after speaking to ICE officer Heart at [Columbia]." *Id.* The plaintiff asserts that, in anticipation of the denial of his complaint, he asked Scott to help him prepare an appeal before he was transferred. ECF No. 36, ¶ 7.

Scott swears he helped the plaintiff prepare and draft his appeal of the dismissed complaint "in March of 2017." ECF No. 38, ¶ 8. But he says he did so only *after* the plaintiff received notice that the complaint had been dismissed, which was after the plaintiff's transfer to Columbia. *Id.* He reviewed a copy of the appeal the CCE received on August 10, 2017, and confirms "it is an accurate copy of the appeal I helped draft." *Id.*, ¶ 9. The plaintiff swears he mailed his appeal to the CCE's office "[o]n or about March 23, 2017 (the same day I received a copy of the notice of dismissal of [the] complaint[)]." ECF No. 36, ¶ 10; ECF No. 37, ¶ 15. He believed he timely filed the appeal. ECF No. 37, ¶ 16.

The plaintiff returned to WRC on July 3, 2017. ECF No. 36, ¶ 11; ECF No. 37-4 at 3. He says he spoke with "ICE officer Steven Spanbauer," who informed him "that a late appeal would be accepted as 'late for good cause.'" ECF No. 36, ¶ 12; ECF No. 37, ¶ 18. Scott, however, swears that it was he (and not the plaintiff) who spoke with Officer Spanbauer. ECF No. 38, ¶ 11. Scott says he helped the plaintiff draft and send the July 17, 2017 letter to the CCE "immediately after speaking with Mr. Spanbauer." *Id.*, ¶ 12. The declarations agree that Scott helped the plaintiff draft the letter asking about the status of his appeal and if he could refile it. ECF No. 37, ¶ 19; ECF No. 37-5 at 2; ECF No. 38, ¶¶ 12–13. Scott swears he also helped the plaintiff prepare the August 7, 2017

5

letter asking to refile the appeal "in absence of any response from the CCE." ECF No. 38, ¶ 14. He says he enclosed a copy of the March 23, 2017 appeal with the letter. *Id.* Contrary to Scott's declaration, the plaintiff swears he refiled his appeal in response to the August 2, 2017 letter from the CCE, which is attached to his declaration. ECF No. 37, ¶¶ 20–21; ECF No. 37-5 at 3. The plaintiff concedes the CCE received his appeal more than ten days after the dismissal. ECF No. 35, ¶¶ 6–7. He says the CCE never provided an "explanation as to why my initial appeal was never received by the CCE." ECF No. 36, ¶ 16; ECF No. 37, ¶ 22.

## II. ANALYSIS

### A. Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### B. Exhaustion

Under the Prison Litigation Reform Act, an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy," *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (citing *Woodford*, 548 U.S. at 93), *overruled on other grounds by Henry v. Hulett*, 969 F.3d 769, 774 (7th Cir. 2020)). That means if the plaintiff failed to complete any step in the prison's exhaustion process before bringing his lawsuit, the court must dismiss the plaintiff's claim. *See Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999). "Substantial compliance with administrative remedies" does not satisfy exhaustion requirements. *Farina v. Anglin*, 418 F. App'x 539, 543 (7th Cir. 2011) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001), and *Dole*, 438 F.3d at 809). Because exhaustion is an affirmative defense, the defendant bears the burden of proving that the plaintiff failed to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

Wisconsin has an established system that allows inmates to file complaints about policies, rules, living conditions, and staff actions at their institutions. Wis. Admin. Code

§§ DOC 310.01, 301.04 (2014).[2] Wisconsin's 2014 version of its administrative code, in effect at the time the plaintiff filed his complaint and appeal, provides that the Department of Corrections must make the complaint process "readily available to all inmates" and mandates that its prisons "make appropriate provisions for non-English speaking, impaired or handicapped inmates." *Id.* § DOC 310.06.

Inmates must exhaust all administrative remedies that the Department of Corrections has promulgated by rule before commencing a civil action against an officer, employee, or agent of the DOC. *Id.* § DOC 310.05. An inmate must file a complaint within fourteen calendar days of the incident he seeks to grieve. *See id.* § DOC 310.09(6). An inmate may appeal a rejected complaint to a reviewing authority within ten calendar days. *Id.* § DOC 310.11(6).

If the inmate is dissatisfied with the reviewing authority's decision, he may appeal to the CCE within ten calendar days. *Id.* § DOC 310.13(1). For good cause, the CCE may accept for review a late appeal filed more than ten calendar days after dismissal of the complaint. *Id.* § DOC 310.13(2). The CCE must issue a written receipt of the appeal within five "working days" after receiving it. *Id.* § DOC 310.13(4). Within thirty-five working days of the appeal, the CCE must make a recommendation to the Office of the Secretary. *Id.* § DOC 310.13(6). The Secretary makes the final decision regarding the appeal within ten working days of receiving the CCE's recommendation. *Id.* § DOC 310.14(1). If an inmate does not receive the Secretary's written decision within forty-five days after the CCE provides the written receipt of the appeal, "the inmate shall consider the administrative

---

[2] Wisconsin updated its Administrative Code related to inmate complaints in 2018. All references to the Administrative Code are to the 2014 provisions that were in effect at the time the plaintiff filed his complaint.

remedies to be exhausted" any may bring a lawsuit in district court. *Id.* § DOC 310.14(3); *see Lockett v. Bonson*, 937 F.3d 1016, 1026 (7th Cir. 2019).

**C.     Discussion**

It is undisputed that the plaintiff timely filed a complaint about Ratchman's allegedly inadequate treatment and that the complaint was dismissed. The plaintiff says he timely appealed that decision on March 23, 2017, but the CCE never received his appeal. It is undisputed the CCE's office received an appeal from the plaintiff on August 10, 2017— five months after his complaint was dismissed. The defendant contends the plaintiff's appeal was untimely and that the plaintiff has no excuse for his late filing. The plaintiff asserts the evidence shows he did exhaust or that, if he did not, he should be excused from not exhausting because the administrative process was unavailable to him and he has "good cause" to excuse his late appeal.

**1.  Failure to Exhaust**

Wisconsin's administrative rules require that the CCE send the plaintiff a written receipt acknowledging his appeal within five days of receiving the appeal. Wis. Admin Code § DOC 310.13(4). It is undisputed the plaintiff did not receive a receipt in March 2017 and did not inquire about the status of his appeal until July 2017—well beyond the ten-day time limit for filing an appeal. The plaintiff says he timely appealed in March 2017, but the CCE simply did not receive the appeal.

The Court of Appeals for the Seventh Circuit recently addressed this situation, where a Wisconsin inmate alleged he timely appealed a dismissed complaint but did not receive a written receipt of the appeal. In *Lockett*, 937 F.3d at 1026, the Seventh Circuit explained Wisconsin's receipt system for inmate complaints and appeals. The Court

noted the "significant role" the receipt plays in the administrative process and in an inmate's "ability to preserve his right to initiate litigation in the district court if the prison system fails to resolve the complaint." *Id.* Without receiving the receipt, the plaintiff could not bring a lawsuit. *See id.* at 1026 & n.24 (citing §§ DOC 310.13(6), 310.14(1) & (3)).

The Seventh Circuit reviewed "the regulations in their totality" and held that an inmate is "obliged to regard the absence of [an appeal] receipt as a red flag." *Id.* at 1027. When the inmate did not receive notice of receipt of his appeal, the Court explained, "he should have undertaken, through the complaint procedure, an inquiry to ascertain why he had not received this important document." *Id.* Wisconsin's administrative code provides inmates avenues "to address challenges they encounter during the inmate complaint process." *Pickens v. Schmidt*, No. 19-C-741, 2020 WL 4530717, at *3 (E.D. Wis. Aug. 6, 2020). For example, inmates may file an information request with the inmate complaint examiner or file a grievance to complain about interference with their efforts to file a complaint. *Id.* Because the inmate in *Lockett* did not take advantage of those options, he could not "counter evidence that the prison did not receive his administrative appeal with a bald assertion of a timely filing." *Lockett*, 937 F.3d at 1027; *see Pickens*, 2020 WL 4530717, at *3. The Court held that the plaintiff needed to present additional evidence "to support his affidavit's assertion that he filed the appeal." *Lockett*, 937 F.3d at 1028.

The plaintiff asserts that his situation is distinguishable from *Lockett* because he presented additional evidence that he timely filed his appeal. He points to Scott's declaration to support his position that Scott helped him prepare his appeal "[i]n anticipation of dismissal of the WRC complaint." ECF No. 39 at 4 (citing ECF No. 36, ¶ 7). But the plaintiff's and Scott's declarations contradict each other. The plaintiff swears he

10
Case 2:19-cv-01367-LA   Filed 11/03/21   Page 10 of 18   Document 42

did not receive notice that his inmate complaint had been dismissed until March 23, 2017—*after* he was transferred from WRC to Columbia and *after* he was released from suicide watch. He swears he mailed his appeal to the CCE the same day, without Scott's help. He says he received no mail and no inmate complaint notices while he was on suicide watch or before he was transferred to Columbia. ECF No. 37, ¶¶ 13–15. Scott confirms that the appeal the CCE received on August 10, 2017, is the one he helped the plaintiff draft in March 2017. But he swears it was only *after* the plaintiff received notice that the complaint had been dismissed—and, therefore, *after* the plaintiff was transferred to Columbia—that he helped the plaintiff draft the appeal. ECF No. 38, ¶ 8. Because Scott remained at WRC when the plaintiff was transferred, his timeline of events is not possible.

The contradicting declarations leave it unclear whether Scott helped the plaintiff draft his initial appeal or only helped him resubmit his appeal in August 2017. But even if he did help the plaintiff *prepare* the initial appeal, Scott does not say whether he knows the plaintiff *sent* his appeal on time or at all. Nor could Scott know because he remained at WRC when the plaintiff was transferred to Columbia, and it was only after the transfer that the plaintiff mailed his appeal. Scott's declaration does not corroborate the plaintiff's and does not provide additional evidence that the plaintiff timely sent his appeal.

Nor does the plaintiff have other evidence corroborating his declaration such as, for example, a post-marked copy of the initial appeal showing he mailed it on March 23, 2017. The only copy of the plaintiff's appeal in the record is the one stamped as received by the CCE Office on August 10, 2017. ECF No. 33-2 at 16; ECF No. 38-1 at 2. Although that document is dated March 23, 2017, the only evidence that the plaintiff put it in the mail or gave it to prison authorities to mail in March 2017 is his assertion that he did so.

11
Case 2:19-cv-01367-LA   Filed 11/03/21   Page 11 of 18   Document 42

The declaration alone "is insufficient to establish that he ever exhausted the opportunity to resolve the matter within the prison system" and does not create a genuine dispute of fact whether he timely filed his appeal. *Lockett*, 937 F.3d at 1027–28.

The evidence shows the plaintiff timely filed a complaint but did not timely appeal the dismissal of his complaint. Because the plaintiff failed to file his appeal "at the time[] the prison's administrative rules require," *Pozo*, 286 F.3d at 1025, he failed to exhaust his administrative remedies.

### 2. Unavailability

The plaintiff alternatively asserts that administrative remedies were not available to him because of his limited understanding of the English language. He swears he had assistance filing his complaints and appeals at WRC but had no such assistance after he was transferred to Columbia. He contends his limited English comprehension should excuse him from knowing about the appeal receipt and following the proper channels to inquire about it.

Inmates must exhaust only "available" administrative remedies. 42 U.S.C. § 1997e(a); *see generally Ross v. Blake*, 578 U.S. 632 (2016). An administrative process, such as Wisconsin's inmate complaint system, is considered "available" if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth*, 532 U.S. at 738). A prison must inform its inmates about the administrative complaint process and communicate this information "in a way reasonably likely to be understood" by the inmate. *Ramirez v. Young*, 906 F.3d 530, 535 (7th Cir. 2018) (citing *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); and *Roberts v. Neal*, 745 F.3d 232, 235 (7th Cir. 2014)). It is undisputed the plaintiff was given a copy of the inmate handbook,

which informed him about the administrative process. The plaintiff asserts the administrative process was unavailable to him because his language barrier prohibited him from understanding his obligations without assistance.

In determining whether the administrative rules were "available" to the plaintiff, I must take into account his "individual capabilities," including his limited comprehension of the English language. *Ramirez*, 906 F.3d at 535 (citing *Weiss v. Barribeau*, 853 F.3d 873, 875 (7th Cir. 2017)). At the same time, a prison need not have "numerous translators on retainer" to account for any language its inmates speak. *Id.* at 538–39. Wisconsin's Administrative Code requires the DOC to "provide an inmate the opportunity to ask and have questions answered" and to "make appropriate provisions for non-English speaking" inmates. Wis. Admin. Code § DOC 310.06. So long as the prison fulfills this obligation, it remains able "to take some action in response to the complaint," and administrative remedies are available to non-English speaking inmates. *Lagalbo v. Raemisch*, No. 08-C-997, 2010 WL 2900370, at *3 (E.D. Wis. July 20, 2010) (citing *Dole*, 438 F.3d at 809, and Wis. Admin. Code § DOC 310.06). If the prison does not comply with DOC 310.06 and assist non-English speaking prisoners, its administrative remedies are not "available," and the plaintiff may be excused from not exhausting those remedies before bringing suit. *Id.* (citing *Dole*, 438 F.3d at 809; *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); and *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004)); *see also Lang Vo Tran v. Illinois Dep't of Corr.*, No. CIV. 09-302-GPM, 2011 WL 816630, at *8 (S.D. Ill. Mar. 1, 2011) ("A prisoner's lack of familiarity with English may excuse a failure to exhaust administrative remedies where the prisoner is given insufficient assistance by prison officials to enable the prisoner to satisfy the prison grievance process.").

The plaintiff's only suggestion that he requested assistance from prison staff is his statement that he asked for documents in his native language but did not receive them. ECF No. 37, ¶ 24. But as noted, DOC 310.06 does not require that the prison have versions of its documents available in every language, including the plaintiff's native "Ma." *See Ramirez*, 906 F.3d at 538–39. The prison was obligated only to "make appropriate provisions" for inmates who speak a language other than English. Aside from asking for paperwork in his native language, the plaintiff does not say whether he asked prison officials for assistance in preparing his complaints or appeals.

The record shows the plaintiff has been able to use the administrative complaint system despite his limited English. The plaintiff filed his complaint against the defendant with Scott's assistance, and he filed several previous complaints and appeals with help from other inmates. This shows the plaintiff's English abilities are not so lacking that he was unable to ask others, including prison officials, for assistance. *See Tran*, 2011 WL 816630, at *8 (citing *Sosa v. Cleaver*, No. 3:03CV1707DJSTPS, 2005 WL 1205119, at *3 (D. Conn. May 18, 2005), and *Castano v. Nebraska Dep't of Corr. Servs.*, No. 4:98CV3007, 1999 WL 1442028, at *3 (D. Neb. June 11, 1999)) ("Given [plaintiff's] ability to make himself understood to the English-speaking prisoners who write his papers in this matter, it is reasonable to conclude that [he] could have pursued administrative remedies despite his lack of proficiency in English."). The prison's remedial process was not unavailable because the plaintiff chose to rely on other prisoners to assist him with his complaints instead of seeking assistance from prison officials. *See id.* (citing *Rodriguez-Ramos v. Smith*, No. CIV.A. 04-CV-0249, 2005 WL 3054291, at *6–7 (E.D. Pa. Nov. 14, 2005), *aff'd sub nom. Ramos v. Smith*, 187 F. App'x 152 (3d Cir. 2006)).

Moreover, there is evidence suggesting prison officials *did* understand and assist the plaintiff with his appeal. The plaintiff states he received notice of dismissal of his complaint "after speaking to ICE officer Heart at CCI, after my transfer." ECF No. 37, ¶ 14. Although it is not clear whether this officer assisted the plaintiff with his appeal or merely informed him his complaint had been dismissed, it shows staff at Columbia understood the plaintiff and assisted him. The plaintiff also swears that when he returned to WRC on July 3, 2017, Officer Spanbauer told him to contact the CCE, refile his appeal, and request good cause to accept the late appeal. *Id.*, ¶ 18. Scott says he, and not the plaintiff, spoke with Spanbauer and helped the plaintiff contact the CCE's office. ECF No. 38, ¶¶ 11–12. Nonetheless, these statements show prison officials did not refuse to assist inmates in preparing or filing an administrative complaint or appeal.

The plaintiff alternatively argues "that he suffers from a crippling mental disorder" that rendered administrative remedies unavailable. ECF No. 39 at 11. The plaintiff provides his diagnosis but does not explain the extent of his symptoms. *Id.* at 9–10. Wisconsin's administrative rules require DOC facilities to assist "non-English speaking, *impaired* or handicapped inmates." Wis. Admin. Code § DOC 310.06 (emphasis added); *see also id.* § DOC 310.09 ("The department shall not exclude impaired . . . inmates from full participation in the ICRS."). The foregoing discussion therefore applies the same whether the plaintiff needed assistance because of difficulties with language comprehension or a mental disorder. *See Weiss*, 853 F.3d at 875 (excusing failure to exhaust because defendants failed to show administrative remedies were "available" to prisoner "suffering a mental breakdown requiring hospitalization").

The evidence shows the plaintiff knew about the prison's administrative process and successfully used it previously with help from other inmates despite his language barrier and mental illness. There is no evidence the plaintiff requested help from prison officials and that officials refused to provide him reasonable assistance with his complaints or appeals. The evidence shows that, despite the plaintiff's challenging individual capabilities, the prison's administrative process remained available to him.

### 3. Good Cause

Even if I assume the plaintiff timely mailed his appeal on March 23, 2017, it is undisputed the CCE did not receive it, and the plaintiff did not inquire about it, for four months. It is undisputed the CCE first received his appeal on August 10, 2017. The plaintiff suggests his late appeal should have been excused for "good cause"—his English language difficulties, transfer to Columbia, and "crippling" mental disorder.

A CCE has discretion to accept a late filing for good cause. *See* Wis. Admin. Code § DOC 310.13(2). But whether the plaintiff provided good cause to excuse his late appeal "'is not a decision for the court to make in the first instance.'" *Gibson v. Chester*, No. 19-C-45-PP, 2020 WL 5716055, at *6 (E.D. Wis. Sept. 24, 2020) (quoting *Smith v. Martin*, No. 14-C-429, 2016 WL 3830565, at *3 (W.D. Wis. July 12, 2016)). The plaintiff instead must present his argument for good cause to the CCE, who will determine whether the appeal should be allowed to proceed. *Id.* (citing *Smith*, 2016 WL 3830565, at *3, and *Bowers v. Husz*, No. 08-C-197, 2009 WL 2605217, at *1 (E.D. Wis. Aug. 24, 2009)).

The plaintiff did not raise in his refiled appeal any of his proffered reasons for good cause to excuse his late filing. The plaintiff's August 10, 2017 appeal contained what he says is the initial appeal from March 2017, which contains no request for good cause. He

also included a letter that says once he gives his mail to correctional staff, "it is out of [his] hands." ECF No. 33-2 at 17. That was the plaintiff's only proffered reason to excuse his late appeal. Neither the letter nor the appeal says anything about his language difficulties, his transfer to Columbia, or his mental illness. The CCE, therefore, did not know to investigate these issues and determined that the plaintiff provided "no good cause to address this late appeal." ECF No. 33-2 at 6. Because the plaintiff failed to raise those grounds for good cause to the CCE, he cannot challenge the CCE's discretionary decision in this court. *See Pollard v. Nikolai*, No. 20-C-1868, 2021 WL 4502724, at *3 (E.D. Wis. Oct. 1, 2021); *Gibson*, 2020 WL 5716055, at *6–7 (citing *State ex rel. Laurich v. Litscher*, 686 N.W.2d 668, 672–73 (Wis. Ct. App. 2004)).

### III. CONCLUSION

The plaintiff untimely appealed the dismissal of his inmate complaint about the issue in this lawsuit. He provided no good cause to excuse his late appeal, and the evidence does not show the administrative process was unavailable to him. I conclude that the defendant has satisfied his burden to show the plaintiff failed to exhaust his administrative remedies before bringing this lawsuit. I will therefore grant his motion and dismiss this lawsuit without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (explaining that "*all* dismissals under § 1997e(a) should be without prejudice").[3]

**THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment on exhaustion grounds (ECF No. 30) is **GRANTED**.

---

[3] The issues resolved in this decision involve questions of law, and the plaintiff failed to provide evidence creating a genuine dispute of material fact. Therefore, there is no need for an evidentiary hearing as described in *Pavey*, 544 F.3d at 742. *See Aguirre v. Witek*, No. 08-C-1110, 2010 WL 1292161, at *2 (E.D. Wis. Mar. 30, 2010) (citing *Doss v. Gilkey,* 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009)).

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 3rd day of November, 2021.

        s/Lynn Adelman_____
        LYNN ADELMAN
        United States District Judge